IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DESERET BOOK COMPANY,<br><br>　　Plaintiff,<br><br>v.<br><br>NANJING LIAN YIDU TRADING CO., LTD.,<br><br>　　Defendant. | Case No: 2:24-cv-00961-JNP<br><br>**MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S EX PARTE MOTION FOR EXPEDITED DISCOVERY AND SERVICE BY ALTERNATE MEANS**<br><br>U.S. District Judge Jill N. Parrish |

Before the court is a motion filed by plaintiff Deseret Book Company for expedited discovery and for service by alternate means. ECF No. 12. The motion is GRANTED.

## BACKGROUND

Deseret Book is a corporation organized under the laws of the State of Utah with a principal place of business at 55 N 300 W, Suite 300, Salt Lake City, Utah, 84101, with retail stores located throughout the State of Utah and the United States. Deseret Book is the owner by assignment of the copyright in certain paintings by Greg Olsen, including the copyrighted works identified in the Complaint (the "Olsen Works"). Defendant Nanjing Lian Yidu Trading Co., Ltd. ("Nanjing Trading Co.") is a Chinese business entity and Amazon seller. Deseret Book sued Nanjing Trading Co., alleging that it sold hundreds of unauthorized copies of the Olsen Works.

Before filing its Complaint, Deseret Book submitted Digital Millenium Copyright Act ("DMCA") "Notices of Infringement" to Amazon alleging that Nanjing Trading Co.'s product

listings infringed Deseret Book's Copyrights. *See* Compl. ¶ 28. In response, Nanjing Trading Co. submitted scores of DMCA "Counter-Notifications" pursuant to 17 U.S.C. § 512(g)(3). *See id.* In each counter-notification—consistent with the requirements of § 512(g)(3)—the defendant consented "to the jurisdiction of any judicial district in which Amazon may be found." In the Counter-Notifications, Nanjing Trading Co. also agreed "to accept service of process from the person who provided notification under subsection (c)(1)(C) or an agent of such person."

## DISCUSSION

### A.  Expedited Discovery

Deseret Book moves for expedited discovery of Nanjing Trading Co.'s accounts that have received proceeds from the sale of counterfeit goods as alleged in the Complaint. Generally, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." FED. R. CIV. P. 26(d). However, the court may expedite discovery upon a showing of "good cause for departing from the usual discovery procedures" by the party seeking expedited discovery. *Living Scriptures v. Doe(s)*, No. 1:10-cv-0182, 2010 WL 4687679, at *1 (D. Utah Nov. 10, 2010). "The good cause standard may be satisfied where a party seeks a preliminary injunction or where the moving party has asserted claims of infringement and unfair competition." *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003) (citations omitted). "Expedited discovery may also be appropriate in cases where physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation." *Id.* (citation omitted).

Here, Deseret Book seeks expedited discovery to uncover financial information that will help to preserve the status quo and give effect to the asset freeze entered by the court. Deseret

2

Book has produced evidence that the defendant uses Amazon to process payments for consumer purchases of the products at issue. Deseret Book avers that it does not know the identity or location of the banks or other financial institutions to which Amazon transfers funds resulting from Defendant's sales, and that without expedited discovery, it will not know the person or persons or entities upon which to serve the temporary restraining order and asset freeze. Deseret Book argues that Nanjing Trading Co. may then dissipate its funds before relief is granted to Deseret Book.

Because the court has granted Deseret Book's requested asset freeze and finds good cause for its request for expedited discovery to effectuate that asset freeze, the court grants Deseret Book's Ex Parte Motion for Expedited Discovery. Deseret Book is permitted to seek discovery from Amazon of the banks or financial institutions to which Amazon transfers funds resulting from Defendant's sales of the alleged counterfeit Olsen Works as alleged in the Complaint.

B. **Service by Alternate Means**

Deseret Book also moves for an order authorizing it to serve Nanjing Trading Co. by email. The defendant has already consented to receive service of process in this matter. (*See* Compl. Exh. 3.) In each counter-notification, Nanjing Trading Co. agreed "to accept service of process from the person who provided notification under subsection (c)(1)(C) or an agent of such person." (*See id.*) Additionally, Federal Rule of Civil Procedure 4(h)(2) provides that a "foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name," may be served "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual." FED. R. CIV. P. 4(h)(2).

Under Rule 4(f)(3), an individual may be served in a foreign country "by other means not

prohibited by international agreement, as the court orders." *Id.* 4(f)(3).[1] The party seeking service by alternate means "need[] only to demonstrate that the facts and circumstances of the present case necessitate[] the district court's intervention." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002). The alternate means of service authorized by the court must comport with due process. *Id.* Due process requires service of process that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted).

In addition to Nanjing Trading Co.'s consent, Deseret Book argues that service of process by email is appropriate under the Federal Rules, not prohibited by international agreement, and reasonably calculated to give notice to the defendant. Deseret Book alleges that Nanjing Trading Co. primarily communicates with its customers, domain registrars, and web hosts through electronic communications[2] and that service by email would permit the defendant to be promptly notified of the pending action. Deseret Book also argues that service by email is a valid alternative means of effecting service and that service sent to the email that Nanjing Trading Co. used in its DMCA correspondence with Amazon is reasonably calculated to provide notice of this lawsuit. Without a court order authorizing service of process by email, Deseret Book argues that it will

---

[1] The Ninth Circuit has held that Rule 4(f) does not "create a hierarchy of preferred methods of service of process." *Rio Props.*, 284 F.3d at 1014–15 (9th Cir. 2002). Thus, a party need not first attempt to serve an opposing party through methods stated in Rule 4(f)(1) or (f)(2) before resorting to Rule 4(f)(3). *Id.* The Ninth Circuit found support for this position in the language and structure of Rule 4(f), which separates each of the three service options by the disjunctive "or," and in the advisory committee notes. *Id.*

[2] Deseret Book alleges that Nanjing Trading Co. engages in ecommerce and maintains the following email address from which they conducts economic business: guoyoutuo7539@163.com.

likely be unable to pursue final judgment against Nanjing Trading Co. for lack of service.

The Tenth Circuit has not decided whether service by email is proper under Rule 4(f)(3). However, other circuits and district courts have found that Rule 4(f)(3) permits service by email in certain circumstances. *Rio Properties* is a seminal case regarding service by email under Rule 4(f)(3) and is instructive here. In *Rio Properties*, the Ninth Circuit affirmed a district court's "proper[] exercise[] [of] its discretionary powers to craft alternate means of service" in permitting service of process by email on "an elusive international defendant, striving to evade service of process." 284 F.3d at 1016. The Ninth Circuit concluded "[w]ithout hesitation" that service of process by email met the constitutional requirement of due process and was also the method of service most likely to reach the foreign defendant company. *Id.* at 1017. This was because the foreign defendant company "ha[d] embraced the modern e-business model and profited immensely from it," and even "structured its business such that it could be contacted only via its email address" and had "no easily discoverable street address in the United States or in Costa Rica." *Id.* at 1017–18. The Ninth Circuit remarked that "when faced with an international e-business scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process." *Id.* at 1018. Still, the court acknowledged the "limitations" inherent in service of process by email:

> In most instances, there is no way to confirm receipt of an email message. Limited use of electronic signatures could present problems in complying with the verification requirements of Rule 4(a) and Rule 11, and system compatibility problems may lead to controversies over whether an exhibit or attachment was actually received. Imprecise imaging technology may even make appending exhibits and attachments impossible in some circumstances. We note, however, that, except for the provisions recently introduced into Rule 5(b), email service is not available absent a Rule 4(f)(3) court decree. Accordingly, we leave it to the discretion of the district court to balance the limitations of email service against its benefits in any particular case.

5

*Id.* (footnote and citation omitted). Additionally, in *Cisco Systems, Inc. v. Shenzhen Usource Technology Co.*, service by email under Rule 4(f)(3) on foreign defendants based in China was proper when the defendants "operate[d] [an] Internet-based businesses trafficking in counterfeit [plaintiff] products[,] . . . provide[d] email addresses for communication, and . . . ultimately negotiated and consummated transactions for sale of the infringing products . . . via email." No. 5:20-cv-04773, 2020 WL 5199434, at *15 (N.D. Cal. Aug. 17, 2020). Further, the "urgency in shutting down the sales of [the counterfeited products] that threaten[ed] [the plaintiff's] reputation" weighed in favor of permitting service of process by email. *Id.*

The court grants Deseret Book's motion for service via email. First, the court finds that Nanjing Trading Co. has consented to receive service of process. (*See* Compl. Exh. 3.) Second, the court finds that the Hague Convention[3] does not prohibit service of process by email. *See Neck Hammock, Inc. v. Danezen.com*, No. 2:20-CV-287, 2020 WL 6364598, at *4–5 (D. Utah Oct. 29, 2020) (concluding that "email service is not prohibited by international agreement," even though China had objected to service by postal channels under Article 10 of the Hague Convention, and "email service can comport with constitutional notions of due process"); *Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374, 379 n.2 (S.D.N.Y. 2018) (noting that service by email on a Chinese defendant does not violate the Hague Convention even though China had objected to service by postal channels under Article 10 of the Hague Convention); *Cisco Sys.*, 2020 WL 5199434, at *14

---

[3] The Hague Convention is the relevant "international agreement" referenced in Rule 4(f)(3), and both the United States and China are signatories to the Hague Convention. *HCCH Members*, HAGUE CONFERENCE ON PRIVATE INTERNATIONAL LAW, https://www.hcch.net/en/states/hcch-members (last visited Jan. 21, 2025). Accordingly, the court will evaluate the Hague Convention in determining whether the requirements set forth in Rule 4(f)(3) would be satisfied by service of process by email.

("[S]ervice by email on defendants in China is not barred by any international agreement."); *Microsoft Corp. v. Goldah.com Network Tech. Co.*, No. 17-CV-02896, 2017 WL 4536417, at *4 (N.D. Cal. Oct. 11, 2017) (finding that email service was not prohibited under the Hague Convention even though China had objected to service by postal channels under Article 10); *Williams-Sonoma Inc. v. Friendfinder Inc.*, No. C 06-06572, 2007 WL 1140639, at *2 (N.D. Cal. Apr. 17, 2007) (concluding that "service via email is not prohibited by an international agreement").

Lastly, the court finds that email will likely be the best way to effect service of process on the defendant. Nanjing Trading Co. has provided an email address in connection with this dispute: guoyoutuo7539@163.com. (*See* Compl. Exh. 3.) Service of process by email is the most likely means by which to promptly effect service of process and put Nanjing Trading Co. on notice of Deseret Book's lawsuit against them. *See In re Int'l Telemedia Assocs., Inc.*, 245 B.R. 713, 719–21 (Bankr. N.D. Ga. 2000) (authorizing service of process by email under Rule 4(f)(3) when email was one of the only feasible methods of serving the opposing party, and the parties had previously communicated via email); *ADT Sec. Servs., Inc. v. Sec. One Int'l, Inc.*, No. 11-CV-05149, 2012 WL 3580670, at *2 (N.D. Cal. Aug. 17, 2012) (holding that service by email to "the contact email address that is listed on [the defendant's] website" was "not only reasonably calculated to provide actual notice . . . but the method most likely to apprise [defendants] of this action"). Moreover, because Defendant is an e-commerce and foreign-based company, service of process by email is likely "the only means of effecting service of process." *Rio Props*., 284 F.3d at 1018.

## CONCLUSION AND ORDER

Deseret Book's Ex Parte Motion for Expedited Discovery and Service by Alternate Means

is GRANTED. The plaintiff is permitted to seek discovery from Amazon regarding the Nanjing Trading Co.'s accounts that have received proceeds from the sale of the counterfeit products as alleged in the Complaint. In addition, Deseret Book may provide service of process to the defendant pursuant to Federal Rule of Civil Procedure 4(f)(3) and pursuant to its express consent to receive service of process at the following email address: guoyoutuo7539@163.com.

DATED January 21, 2025.

BY THE COURT:

Jill N. Parrish
United States District Judge